UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COYOTE LOGISTICS, LLC,

    Plaintiff,

    v.

MPJ TRUCKING, INC.,

    Defendant.

No. 18 CV 1332

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Plaintiff Coyote Logistics brings this action against defendant MPJ Trucking for holding twelve shipments of freight for ransom, instead of transporting them in interstate commerce, as required by the parties' contract. MPJ moves to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6); MPJ also moves to strike portions of the complaint under Rule 12(f). For the following reasons, the motion to dismiss is granted in part, denied in part, and the motion to strike is granted.

I.     Legal Standards

A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). By contrast, a Rule 12(b)(6) motion "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When analyzing a motion under Rule 12(b)(1) or Rule 12(b)(6), the court

accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012); *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). The court need not accept legal conclusions or conclusory allegations, however. *Virnich*, 664 F.3d at 212.

## II. Background

Coyote Logistics is licensed by the United States Department of Transportation, Federal Motor Carrier Safety Administration to broker the transportation of freight by for-hire carriers in interstate or foreign commerce. [1] ¶ 2.[1] MPJ Trucking is registered with the FMCSA as a for-hire motor carrier of property operating in interstate commerce. *Id.* ¶ 4. Between approximately June 2 and June 5, 2017, MPJ Trucking accepted and agreed to transport a series of twelve shipments of freight for Coyote, which was operating on behalf of its customers. *Id.* ¶ 7. As to each of those twelve shipments, MPJ was the "receiving carrier," as defined by 49 U.S.C. § 14706. *Id.* ¶ 8.

When MPJ received shipment #162, the freight (Lagunitas beer) was in good condition. *Id.* ¶¶ 11–12. Instead of transporting shipment #162 from Illinois to New Jersey, per the agreement with Coyote, MPJ kept the freight in its possession, causing the freight to become damaged and worthless. *Id.* ¶¶ 10, 13. Coyote's actual loss from MPJ's conduct was $36,189.92. *Id.* ¶ 14. Despite Coyote's demands, MPJ has refused to pay Coyote for the damage. *Id.* ¶ 15. Three other shipments suffered

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings.

a similar fate; MPJ received shipment #967, #816, and #032 in good condition, but refused to deliver them, causing Coyote actual losses of $34,986.20, $38,538.17, and $14,413.38, which MPJ refused to pay. *Id.* ¶¶ 18–22, 25–29, 32–36. As a result, Coyote brings four Carmack Amendment claims, one conversion claim, and one breach of contract claim against MPJ Trucking.

Coyote believes that MPJ accepted the shipments with no intention of delivering them to the consignees; Coyote says MPJ intended to hold the shipments in MPJ's facility as ransom. *Id.* ¶ 39. MPJ demanded payment from Coyote in order to release the shipments; but even when Coyote paid the ransom, MPJ did not offer to deliver the shipments. *Id.* Because of this conversion, Coyote says it sustained an actual loss of $145,802.67. *Id.* ¶ 40. MPJ refused Coyote's demands to pay for this damage. *Id.* ¶ 41. Coyote accuses MPJ of acting deliberately and willfully in this conversion; and Coyote seeks punitive damages totaling $437,408.01. *Id.* ¶ 42.

Finally, Coyote asserts that MPJ's refusal to deliver the shipments breached the terms and conditions of the Broker–Carrier Agreement they entered into on May 19, 2017. *Id.* ¶ 45. For this breach of contract, Coyote claims it is entitled to $145,802.67 in damages, plus attorneys' fees. *Id.* ¶ 46.

### III. Analysis

MPJ argues that Coyote does not have standing to bring claims under the Carmack Amendment because Coyote failed to allege a valid assignment.[2] The

---

[2] MPJ's reply brief states: "Defendant is not yet challenging whether Plaintiff itself has the right to pursue a claim directly. Defendant is only requesting that Plaintiff specify which hat it is wearing, or allegedly wearing, in each of the 6 counts currently before the Court and provide a factual basis for same." [20] at 5.

3

Carmack Amendment to the Interstate Commerce Act allows a "person entitled to recover" under the statute to bring suit against any motor carrier for the "actual loss or injury" during the interstate shipment, thereby giving a shipper confidence that the carrier will be liable for damage during transport, and allowing a carrier to assess (and insure against) liability risks. *REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697 (7th Cir. 2008) (quoting 49 U.S.C. § 14706(a)(1)). Some courts have found that brokers are not entitled to bring Carmack Amendment suits, *see Exel, Inc. v. Southern Refrigerated Transp., Inc.*, 807 F.3d 140 (6th Cir. 2015); *Traffic Tech, Inc. v. Arts Transp., Inc.*, No. 15 C 8014, 2016 WL 1270496 (N.D. Ill. Apr. 1, 2016); but, the Seventh Circuit has not addressed the issue. MPJ's argument does not identify a problem of subject-matter jurisdiction; instead, the argument is that the Carmack Amendment does not provide relief for this particular plaintiff. Coyote's complaint adequately alleges that it was injured by MPJ, and there is a case or controversy here.

In any event, whether or not brokers are covered by the Carmack Amendment, Coyote has alleged a valid assignment that puts it in the shoes of the shippers. As MPJ acknowledges, "all Plaintiff needs to state for an assignment is that X person, on X date, assigned X rights to Plaintiff," and "for a subrogation claim, all Plaintiff needs to state is that on X date, Plaintiff paid X dollars, to X person." [20] at 5. In each Carmack claim, Coyote provides that information—albeit not in the way MPJ prefers. For example, in Count I, Coyote states that it tendered a shipment of freight "in its capacity as a broker" and "on behalf of its customer,

4

Lagunitas Brewing Co.," [1] ¶ 10; and that after MPJ damaged the freight, causing an actual loss of $36,189.92, Coyote paid its customer "an agreed sum in exchange for the assignment of all of their/its right, title, and interest in and to shipment #162," *id.* ¶ 14. This information, along with the language in the caption that refers to Coyote as a "subrogee of Lagunitas Brewing Company, et. al." provides sufficient notice to MPJ that Coyote is pursuing the Carmack claims because they have been either assigned or subrogated. *See also id.* ¶¶ 17, 21, 24, 28, 31, 35. No more notice is necessary for MPJ to understand Coyote's theories.

MPJ also argues that Coyote failed to allege a Carmack claim because it did not provide a factual basis for damages to the freight. To state a Carmack claim, Coyote must show: (1) the goods were delivered in good condition, (2) the goods arrived in a damaged condition, and (3) the amount of damages. If Coyote establishes a prima facie case, the burden shifts to MPJ "to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." *REI Transp.*, 519 F.3d at 699 (citation omitted). The complaint clearly alleges the requisite elements as to each of its four Carmack claims, and at the motion to dismiss stage, Coyote's well-pleaded allegations are accepted as true. MPJ's assertion that it returned the freight to Coyote due to a financial dispute, and that bills of lading show that the freight was not damaged when MPJ returned it to Coyote, *see* [20] at 3, does not show that it was free from negligence or that it is relieved of liability under the Carmack Amendment. Coyote's Carmack claims survive dismissal.

5

Next, MPJ argues that the Carmack Amendment preempts Coyote's conversion and breach of contract claims. Congress enacted the Carmack Amendment to simplify the "patchwork of regulation" surrounding the interstate transportation of goods by creating "a nationally uniform rule of carrier liability concerning interstate shipments." *REI Transp.*, 519 F.3d at 697 (citation omitted). In order to achieve a uniform scheme of liability, Congress ensured that the Carmack Amendment preempted state causes of action against carriers for damaged or lost goods, and Congress placed substantive limits on the rights of carriers to contract away liability. *Id.* Not every claim involving damaged or lost goods is preempted, though. The Carmack Amendment does not preempt claims that seek to remedy a separate and independent actionable harm. *Id.* at 697–98 (citing *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 287 (7th Cir. 1997)). Coyote's conversion and breach of contract claims do not fit that exempted category—despite Coyote's conclusory arguments to the contrary.[3] Rather, each of those claims affect MPJ's liability for damaged goods, thereby upending the uniformity the Carmack Amendment sought to create. Those claims are preempted.

MPJ also complains of pleading errors because the complaint requests a judgment against "MJP Freight" instead of the named defendant MPJ Trucking, and it does not enumerate parties and their capacities in the case caption. A fair reading of the complaint, however, leads to the conclusion that Coyote intended to

---

[3] That the conversion claim only involves eight of the twelve shipments does not mean it seeks a remedy for a separate and independent harm. For the Carmack claims, the conversion claim, and the breach of contract claim, the harm is the same—the damaged freight.

6

request a judgment against MPJ Trucking, and not against "MJP Freight." Similarly, reading the complaint as a whole makes it clear that Coyote had three customers—Lagunitas Brewing Co., Masterson Company, Inc., and Ingredion, Inc.—to which Coyote was both a subrogee and an assignee. As such, Coyote's organization and enumeration of the parties' capacities in the case caption is not grounds for dismissal. The facts may belie the allegations, but as with the issue of assignment or subrogation, MPJ Trucking is adequately on notice of the claims.

Finally, MPJ moves to strike the request for attorneys' fees, costs, interest, and punitive damages under the Carmack Amendment. That motion is granted. Since Congress specifically addressed the issue of compensation in the Carmack Amendment, it would "frustrate the uniformity goal" to award other fees or damages beyond the actual loss. *Gordon*, 130 F.3d at 286–27.

## IV. Conclusion

Defendant's motion to dismiss, [15], granted in part, denied in part. Defendant's motion to strike, [15], is granted. Counts V and VI are dismissed with prejudice. Defendant shall answer the complaint by September 20, 2018, and a status hearing remains set for September 28, 2018 at 9:30 a.m.

ENTER:

                                                              Manish S. Shah
                                                              United States District Judge

Date: August 30, 2018